WILLIAM S. PARKER, executor, *vs.* COMFORT PARKER & another.

Middlesex.   Jan. 13.— March 17, 1879.   COLT & SOULE, JJ., absent.

A testator left a widow, three sons, three married daughters and one unmarried daughter then about seventeen years of age. By his will he gave to each of his married daughters legacies in money, and to his unmarried daughter a small sum of money and " a home and maintenance during the time she remains unmarried." To his widow he gave the use and income of all his real and personal estate during life, which consisted of about $2000 in personal property and three farms, on one of which was the homestead where the testator had always lived with his family. To one of his sons he gave nothing, he having received his full share, and to his other sons he gave the remainder of all his property real and personal in equal shares, upon the death of his wife, " they and each of them giving their personal services during my life and the life of their mother in cultivating the premises where I live to the best of their ability." The widow died three years after her husband. The unmarried daughter continued to reside and receive her maintenance at the homestead for four years after the testator's death, when she left on the ground that she was entitled to

be maintained where she might choose to reside. *Held*, that the "home and maintenance" given by the will to the unmarried daughter was intended to be a home and maintenance on the premises where the testator lived at the time of his death; and that she was not entitled to be supported elsewhere.

BILL OF INTERPLEADER, by the executor of the will of Nathan Parker, against Comfort Parker and Bernice Parker, to determine the rights of the parties in interest under the will of the testator, dated April 8, 1869, which contained the following clauses:

"First. My will is that all my just debts shall be paid in full, with all the expense of my burial.

"Second. I hereby give and bequeath to my wife, Fanny Parker, the use and income of all the property, both real and personal, of which I may die seised and possessed, during her natural life.

"Third. I give and bequeath to my daughter, Belinda B. Sawyer, one hundred dollars, to be paid her after the decease of my wife.

"Fourth. I give and bequeath to my daughter, Frances P. Hall, wife of Luther B. Hall, one hundred dollars, to be paid her at the time of payment to said Belinda.

"Fifth. I give and bequeath to my daughters, Caroline Farmer and Mehitable Peabody, twenty-five dollars each, to be paid as in the fourth bequest.

"Sixth. I give and bequeath to my daughter, Comfort Parker, one hundred dollars, to be paid at the time the other bequests are paid, also a home and maintenance during the time she remains unmarried.

"Seventh. My son, Nathan Parker, Jr., having received his full share of my estate, I hereby give and bequeath to my two sons, William S. Parker and Bernice Parker, the remainder of all the property, both real and personal, of which I may die possessed, after the payment of debts and legacies as aforesaid, and the decease of my wife, share and share alike, they and each of them giving their personal services during my life and the life of their mother in cultivating the premises where I live to the best of their ability.

"Finally. I hereby nominate and appoint my son, William S. Parker, sole executor of this my last will and testament."

Hearing before *Colt*, J., who reported the case for the determination of the full court in substance as follows:

The testator died in 1870, and the debts and legacies, with the exception of the legacy to Comfort Parker, which is in dispute, have all been paid, leaving to the residuary legatees, William S. and Bernice, certain personal property of the appraised value of $1988, and also three farms, with the buildings thereon, and some out lands, containing in all two hundred and seventy-four acres, and appraised at $11,200. William S. resides on the homestead farm, where the testator lived and died, and Bernice has quitclaimed his interest therein to him. Bernice resides on another of these farms, and William S. has quitclaimed his interest therein to him. Part of the other farm and out lands has been sold by them, and the residue of the same has been divided between William S. and Bernice by mutual deeds of release. On the homestead, where the testator died, there was a suitable dwelling-house, where the testator had always lived and brought up his family, and where his wife continued to live nearly all the time, except during her last illness of nine weeks at her daughter's, until her death in October 1873. Comfort, who was about seventeen years old when her father died and was his youngest child, lived on the homestead before and after her father's death until October 1874, when she left and went to live in the neighboring city of Lowell. Since the father's death, one or both' of the sons named as residuary legatees have occupied the homestead with the mother.

Comfort Parker contended that, under the provision in question, she was not required to reside at the homestead of the testator to entitle her to the home and maintenance provided, but had the right to reside, have a home and be maintained, or be supported and maintained, elsewhere, within reasonable limitations, irrespective of her ability, by labor or otherwise, to maintain herself; and to receive from the estate a suitable pecuniary allowance therefor. She also contended that, if this was not the true construction, yet she was entitled to receive such pecuniary allowance in this case, because she was justified in leaving the homestead by reason of her brothers' ill treatment of her. The sons contended that the only right given to Comfort

was to have a home and receive support at the homestead so long as they were willing to provide for her there; and that she was not justified in leaving by any ill treatment on their part, but left voluntarily, for reasons of her own.

Upon the question whether Comfort was justified in leaving on account of the ill treatment of her brothers, the judge found, as a fact, that Comfort was not justified in leaving the homestead and claiming an allowance for support elsewhere, and reserved the questions of law arising on the construction of the will for the consideration of the full court; such order or decree to be entered as law and justice might require.

*J. N. Marshall & M. L. Hamblet*, for Comfort Parker.

*D. S. Richardson*, (*G. F. Richardson* with him,) for Bernice Parker.

ENDICOTT, J.  The court is of opinion that the " home and maintenance " given to Comfort Parker, by the will of her father, was intended by him to be a home and maintenance on the premises where he lived at the time of his death; this intention is to be gathered from this and other provisions of the will and the circumstances which surrounded the testator at the time it was made.

The testator left a widow, three sons, three married daughters, and Comfort, then about seventeen years of age.  He gave to each of his married daughters legacies in money, and to Comfort a small sum of money, and "a home and maintenance during the time she remains unmarried."  To his widow he gave the use and income of all his real and personal estate during life.  This estate consisted of about $2000 in personal property, and three farms, on one of which was the homestead where the testator had always lived with his family.  To one of his sons he gave nothing, he having received his full share; and to his other sons, William S. Parker, the executor, and Bernice Parker, one of the defendants, he gave the remainder of all his property real and personal in equal shares, upon the decease of his wife, "they and each of them giving their personal services during my life and the life of their mother in cultivating the premises where I live to the best of their ability."  He makes no other provision for these sons during the lifetime of their mother, and it is not to be supposed that he intended that they should give

their services without any remuneration or any provision for their support.

Although this clause is inartificially drawn, it is clear that it was the intention of the testator that the sons, who were to have the property on the decease of their mother, should give their services in cultivating the homestead, reside there, and receive their support from the estate with their mother, and that it should continue to be the home of the family. This is the home in the mind of the testator referred to in the legacy to Comfort. Intending to provide for his wife and sons a home and maintenance on the homestead, it is not to be presumed, in the absence of express words, that he intended that Comfort, then a girl of seventeen, while unmarried, should have a home and maintenance elsewhere. Such was the practical construction put upon the will by the parties; for Comfort continued to reside and receive her maintenance there until a year after her mother's death, which occurred in 1873, when she left, on the ground that she was entitled to be maintained where she might choose to reside. That she was not justified in leaving by reason of ill treatment on the part of her brothers has been determined by the finding of the presiding judge.

The homestead is now owned and occupied by her brother William S. Parker, the executor of the will, and he is ready and willing to provide for her a home and maintenance there; and we are of opinion that he is not bound to provide her a home and maintenance at another place, at her election. Upon the question what would be her rights, if he should refuse to do so, or should dispose of the estate, we express no opinion.

The numerous cases cited at the argument afford but little assistance in deciding this question. Where a testator provides in his will that his wife, child or other person shall be supported and maintained by his executor, or where the condition of a deed or mortgage recites that the grantee or mortgagor shall support the grantor or mortgagee, and the instrument does not point out that the support shall be provided in a particular place, then the party so entitled may have the support where under reasonable limitations he may choose to reside. But if the instrument points out the place where the support shall be furnished, it is not the right of the party entitled to receive it to

demand that it shall be furnished elsewhere. Each case must be decided on its own facts, looking at the language of the instrument and the surrounding circumstances. See *Crocker* v. *Crocker*, 11 Pick. 252; *Baker* v. *Dodge*, 2 Pick. 619; *Wilder* v. *Whittemore*, 15 Mass. 262; *Thayer* v. *Richards*, 19 Pick. 398; *Pettee* v. *Case*, 2 Allen, 546; *Conkey* v. *Everett*, 11 Gray, 95; *Hubbard* v. *Hubbard*, 12 Allen, 586; *Conant* v. *Stratton*, 107 Mass. 474; *Willett* v. *Carroll*, 13 Md. 459.

*Decree accordingly.*