WILLIAM F. EMERY, Admr., in Equity,

*vs.*

HENRY W. SWASEY, Guardian, and others.

Cumberland.    Opinion December 22, 1902.

*Will.    Life Estate.    Charge upon Estate.*

Upon a bill in equity to obtain the construction of a will it appeared that the testator by clause six of his will devised to his sister Harriet and her husband, and to the survivor, his homestead farm, to have and to hold the same to them and to the survivor of them for and during their natural lives and the life of such survivor, subject, however, to the obligation to furnish a comfortable home and maintenance for his sister Eliza during her natural life.

He also gave to his sister Harriet and her husband $5000, in trust for the payment of the taxes of the farm and for keeping the family tomb, and the buildings in repair.

Upon the decease of said survivor, he devised said farm, and also the trust fund of $5000, to be used for the purpose above set forth, to his nephew William, for his life, and, upon his decease to other relatives on the same terms and conditions. But he did not mention the support and maintenance of his sister Eliza, in the devise to his nephew or any of his successors, under the will.

The circumstances of the case show that his sister Eliza was a very old lady, without any home of her own, and that the testator had provided a home for her for some fourteen years before his death; that the homestead farm was the home of his and his sister's childhood; that he had enlarged, improved and adorned it, and made it an attractive summer home, and that he had provided no other home for her.

*Held;* that the testator clearly intended his sister Eliza to have "a comfortable home and maintenance" on the homestead farm; and that the legacy to her is a charge upon the property and follows the property into the hands of every life tenant who accepts the devise of the homestead.

On report.    Bill sustained.    Decree according to opinion of the court.

Bill in equity for the construction of the will of the late Mark P. Emery, of Portland.

The case appears in the opinion.

*Clarence W. Peabody,* for plaintiff.

*H. W. Swasey, S. L. Larrabee; H. W. Gage, C. A. Strout and L. Turner,* for defendants.

SITTING:   WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J.   A bill in equity for the construction of the will of the late Mark P. Emery of Portland, which comes before the law court on bill, answers and agreed statement of facts.   Mr. Emery died in 1898, aged 81 years, leaving no widow or children; his next of kin being his sisters Eliza W. Steele, aged 78 years, and Harriet F. B. Dunnell, aged 73 years, and the descendants of two other deceased sisters and of four deceased brothers.

Mr. Emery left an estate of about $100,000, all of which was disposed of under his will by eight distinct clauses.   But clause six is the only one which the court is called upon to construe, although some of the other clauses may be alluded to as having a bearing upon the construction of this clause.   This clause is divided into several items, and, so far as it is necessary to refer to it, reads as follows:

"I give, devise and bequeath to my sister Harriet F. B. Dunnell and her husband Joseph Dunnell and to the survivor my homestead farm situated in Buxton, Maine, with all the buildings, household furnishings, stock, tools, carriages and appurtenances belonging thereto including the articles of personal property mentioned in the first clause in my will, meaning by the term homestead farm to include the several parcels of land connected with the same at the time of my decease, whether purchased subsequent to this or not, but not including other outlying farms owned by me in said Buxton, to have and to hold the same to them and to the survivor of them for and during their natural lives and the life of such survivor, *subject,* however, to the obligation to furnish a comfortable home and maintenance for my sister Eliza W. Steele during her natural life.

"I also give and bequeath to said Harriet F. B. Dunnell and Joseph Dunnell and to the survivor of them, the sum of $5000, in trust, to

be by them and the survivor of them held and the interest thereof to be used in paying the taxes of said homestead farm and keeping the same in order and keeping in order the family tomb and also all the buildings on said farm in repair.

"And upon the decease of said survivor I give, devise and bequeath said homestead farm and appurtenances, together with the personal property above mentioned, to my nephew William F. Emery to have and to hold the same for and during his natural life.

"And upon the decease of said first named trustee I give and bequeath to said William F. Emery the above named sum of $5000, and any increase thereof in trust to be held by him for the purpose above set forth."

Upon the decease of William F. Emery the testator gives the property devised in the same language to Horatio Emery for life and names him as trustee. Upon his decease he gives it in the same language and upon the same terms to Thomas K. Emery and upon the decease of Thomas K. Emery he gives the remainder to the eldest son then living of William F. Emery and names him as trustee, and further provides against the incident of forfeiture.

The question submitted for the opinion of the court is the construction of this clause, with respect to the provision for the home and maintenance of Eliza W. Steele.

Does it make them a charge upon the property?

It is a well settled rule that the court will seek "to discover and give effect to the intention of the testator as disclosed in the light of any avowed or manifest object of the testator." *Page* v. *Marston,* 94 Maine, 345; *Mace* v. *Mace,* 95 Maine, 283, 285.

"Each case must be decided on its own facts, looking at the language of the instrument and the surrounding circumstances." *Parker* v. *Parker,* 126 Mass. 438.

Was it the intention of the testator that his sister Eliza should have "a comfortable home and maintenance" from and upon the homestead farm? We think it was.

That portion of the statement of facts bearing upon this question is as follows:

Eliza W. Steele was born July 27, 1820.

She first married Washington Kimball and had a son, born September 11, 1837, Thomas Kimball, now living, and whose name was changed to Thomas Kimball Emery.

After the death of her first husband, she married, October 9, 1851, Joseph G. Steele, who died May 22, 1884, without issue.

Eliza W. Steele was a sister of Mark P. Emery. He was born February 11, 1817, and died April 6, 1898.

Harriet F. B. Dunnell, born March 17, 1825, died September 3, 1901.

Joseph Dunnell, husband of said Harriet, died January 21, 1899.

Soon after the death of Joseph G. Steele, Mr. Mark P. Emery assumed the support of Eliza W. Steele and thereafterwards, as long as he lived, provided for her support and comfort, furnishing her with clothing and pin money and paying for medical attendance and care. Most of the time he caused her to be cared for in the family of Thomas K. Emery, although after the death of Mr. Mark P. Emery's wife, Mrs. Steele spent some of her time at his home on Free Street in Portland.

On April 6, 1898, the date of the death of Mark P. Emery, his sister, the said Harriet F. B. Dunnell, aged 76 years, lived at Cumberland Mills, Westbrook, Maine, with her family, consisting of her husband Joseph Dunnell, aged 81 years (who subsequently died January 2, 1899,) of her invalid son George Dunnell, aged about 50 years, her grandchildren, Henry F. Warren aged 14 years and Mildred Warren aged 15 years, and that neither said Harriet nor her husband had any property except a small amount of household furniture; that the entire family was dependent upon the earnings of her husband, which, on account of his age and physical condition were quite small, and that all these facts were well known to said Mark P. Emery, who owned the house where she resided and allowed her to occupy it rent free, and had besides yearly contributed to her support for a long time prior to his decease.

Clause six of the will deals exclusively with reference to the homestead farm.

Viewed in the light of the above agreed facts and the surround-

ing circumstances, it seems to us that the "manifest object of the testator" is clear.

He was an old man.  He had achieved success in life.  He had retained or gained possession and ownership of the old homestead farm.  He had enlarged, improved and adorned it, and made it an attractive summer home.  He was interested in the welfare of the community as his bequests to the church show.

Upon this farm he and his sisters were born, and here they spent their early days together.  In the evening of life, when childhood days were again upon him, his thoughts naturally turned to the old home, the scenes of his childhood, as a haven of rest and peace to himself, and, as he well knew, of like comfort and solace to his aged sister, to whom would come, from out the past, the same happy and hallowed associations that made the place a cherished spot to him.

His mind turned to his old homestead.  The very first clause of his will provided that all his "household goods, furniture, pictures and personal property of every kind," should at his decease, be transferred to the homestead farm."

In clause four, he devised to the church a small piece of land and "eleven horse-sheds" before erected by him, "in trust to be used by my sisters, Mrs. Joseph Dunnell and Mrs. Eliza W. Steele, and my other relations named in my will as entitled to the occupancy in succession of my homestead farm."

At the decease of the testator we find this home, beautified and adorned by the treasures of his own household, capacious and ready for occupancy, and just outside the doors, his dependent sister, destitute and helpless, who had not where to lay her head.

Under these conditions he gave this farm to his other sister for life, with the proviso for Eliza, and then, in succession, to several relations, as stated in the items of the will above cited.

Can it be that he intended, or could intend, that this old lady should either be dependent upon Mrs. Dunnell's private property for a home or be sent about and boarded out, as any of the successive life tenants might will?

It was not money that this old lady needed.  And we cannot think that Mr. Emery, who had, for fourteen years, kindly and

cheerfully cared for his sister, intended she should have such a home as the plaintiff in his bill suggests. Would it be a "comfortable home"?

We think not. The words "comfortable home," we believe, meant something more to Mark P. Emery than a shifting abode, with strange faces and strange surroundings.

The very circumstances of this case emphatically declare that Mr. Emery should have provided a home for this old lady, on the ancestral estate, amid the scenes of his and her childhood.

And we think he did do it.

The first item of clause six is the only one which alludes to the support of Mrs. Steele, but this item, we think, in clear terms, defines her rights.

All of this item between the word "farm" in the third line and the word "subject" in the thirteenth line, are clauses and phrases qualifying the nature, extent and terms of the devise, but without any reference whatever to the meaning or construction of the preceding or following clauses. If we omit these intervening clauses the item will then read: I give, devise and bequeath to my sister Harriet F. B. Dunnell, and to the survivor of them, my homestead farm, subject, however, to the obligation to furnish a comfortable home and maintenance for my sister, Eliza W. Steele, during her natural life. What was *subject?* Harriet F. B. Dunnell or the farm?

By the natural, grammatical and ordinary construction of the sentence, "subject," modifies the word "farm".

The meaning of the sentence is also in exact accord with the construction. It is without ambiguity or doubt. It makes the farm "subject" (liable) to furnish a comfortable home for his sister.

The language clearly and explicitly makes the homestead, itself, subject, not to the support, which might leave the place of support open to explanation, but to the *obligation* to furnish a home as well as support.

The sentence uses apt and strong language to secure just what, from all the circumstances in the case, one would expect the testator to do. On the other hand, if the contention of the plaintiff was true, and Mrs. Dunnell had not accepted the devise, this aged sister,

who had been for years, and was at the time the will was made, a source of care and solicitude to the testator, would have derived no benefit whatever from the provisions of clause six, would have been left without any home, and this farm would have passed into the hands of the successive life tenants entirely unincumbered. But Mrs. Dunnell did accept, and the plaintiff's contention now is, that the obligation to furnish a home and support was a personal one, exempting the homestead farm at her decease, and attaching to her own private estate, if she left any.

It would require very strong language in a will, made under the circumstances surrounding this one, to warrant a construction so apparently contrary to the manifest purpose and intention of the testator.

Again, clause four unequivocally sustains the above construction. It gives in trust the horse-sheds at the church "to be used by my sisters, and my other relations named in my will as entitled to the occupancy in succession of my homestead farm."

The testator mentions both sisters by name, as entitled to the occupancy of the farm. But if the contention of the plaintiff is true Eliza might never have occupied it, as her occupancy would have depended upon the will of the life tenants.

This clause clearly shows that he intended for her to occupy the farm, not as a matter of charity, but as a matter of right.

The legacy to Mrs. Steele, being a charge upon the property, follows the property into the hands of every life tenant who accepts the devise of the homestead.

We have no hesitancy in saying that Eliza W. Steele is entitled to "a comfortable home and maintenance" on the homestead farm of the testator as long as she lives, and that William F. Emery, having accepted the property, is bound to furnish it, while he retains possession of the farm.

We do not feel called upon to interpret the meaning of the phrase "comfortable home and maintenance." Mrs. Steele has made no complaint. The words are so self-explanatory, and the duty imposed by them so plain, that, upon all probability no question will ever arise upon this branch of the case.

William F. Emery, the plaintiff, who, we presume, was acquainted with all the circumstances and surroundings of this case, is undoubtedly better able, from his own personal knowledge, than the court can be from cold testimony, to know what kind of a home and maintenance his uncle intended for his sister to have.

Nor have we sufficient data upon which to base a conclusion with respect to the support furnished Mrs. Steele, in the interim, between the death of the testator and the acceptance of the devise by Mrs. Dunnell.

*Bill sustained.    Decree in accordance with this opinion.*