WILLIAM GREENE by Guardian *et al. vs.* THOMAS W. D. RATHBUN Admr., *et al.*

· JANUARY, 11 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Wills. Charge for Support. Legacies.*

Testamentary devise to X. of the residue for life "she to support and furnish my son Y. in sickness and in health with board and clothing and see that

he is well provided for and taken good care of during his natural life. I hereby bind all the real estate and personal property given to X. to secure his support; after the death of X., I give devise and bequeath unto the children of my son Z. all the remainder of my real and personal estate to be divided in equal shares between them, to them their heirs and assigns, they being bound to the support of my son Y. in case of the death of my daughter X." X. was appointed executrix, and performed the conditions until her decease, whereupon an administrator was appointed. The questions to be determined were as to the rights of Y., in and to the estate devised and bequeathed to the children of Z., and as to whether the support of Y. was a charge upon the real and personal estate, and whether the guardian of Y. was entitled to receive from such estate, or from said devisees in remainder and said administrator, the amount which the guardian had applied from the separate estate of his ward Y.

*Held,* that Y., by virtue of the provisions for his support for life, stood in the relation of legatee to the estate, and that the legacy was an express charge upon all the residuary estate to secure such support during the life of Y., and the residuary devisees were entitled to nothing except what was left after the legacy to Y. was paid.

(2) *Same.*

*Held,* further, that the administrator should hold the personal estate charged as above, until after the death of Y.

*Held,* further, that, while it was the intent of testator that Y. should reside and be supported upon the homestead property, his guardian could exercise a proper discretion as to his future place of abode.

(3) *Remainders.*

*Held,* further, that the remainder created by the will vested at the death of testator in all the children of Z. then living, subject to open and let in any children of Z. born after the death of testator, and before the death of X., the life tenant.

(4) *Vested Remainders.*

One of the children of Z. was living at the death of testator, but deceased intestate without ever having issue born alive, and leaving her father Z. and husband her surviving.

*Held,* that she became entitled at death of testator to a vested remainder in an undivided part of the residuary real estate, which passed to her father Z. as sole heir at law, and which, upon his death intestate, passed to his heirs at law, viz.: all his remaining children, while as to that portion of the residuary personal estate, her husband became entitled to administer upon her estate, and might hereafter become entitled to demand as such administrator such proportional part of such estate as she would have been entitled to, if she had survived, at the time of its distribution.

(5) *Guardian and Ward. Charge for Support.*

*Held,* further, that the guardian of Y. was entitled to recover from the administrator, out of the personal estate, such an amount as should be shown to have been necessarily and properly expended for his support, out of his

own individual estate, so that such individual estate might be reimbursed for any depletion caused by the failure of the residuary devisees to furnish him with support under the terms of the will.

(6)    *Charge for Support.    Sale of Real Estate.*

*Held*, further, that, as the personal estate appeared to be ample for the support of Y., owing to his advanced age, it was unnecessary at this time to decree sale of the real estate.

BILL IN EQUITY, for construction of will.    Certified to Supreme Court.

PARKHURST, J.    This is a bill in equity praying the construction of the will of Reynolds Greene, late of North Kingstown, deceased.

The bill was filed in the Superior Court for Washington county, and answer made thereto by the several respondents, admitting all of the essential allegations of the bill; and the cause, then standing for hearing upon bill and answer by the Superior Court, was certified to this court for its determination as being a cause ready for hearing for final decree, and as being a bill for the construction of a will, in accordance with the statute in such case made and provided (Gen. Laws, 1909, cap. 289, § 35).

The essential facts as alleged and admitted by the bill and answers are, that the testator Reynolds Greene deceased at North Kingstown on the 29th day of March, 1881, leaving a last will, with a codicil, which was duly probated June 28th, 1881; that Rachel R. Greene was by the will named as executrix, and was duly appointed and qualified as such and acted in that capacity during her lifetime; that said Rachel R. Greene died on the sixth day of September, 1905, and that the respondent, Thomas W. D. Rathbun, was duly appointed administrator, d. b. n., c. t. a., in succession to the said Rachel R. Greene, deceased, and duly qualified, and is now acting as such; that at the time of the demise of the said testator, his son, Oliver W. Greene, had then living children as follows, to wit: Walter R. Greene, one of the complainants; Thomas A. L. Greene; Sarah L. Curtis; Samuel W. Greene; Oliver W. Greene; and Elizabeth Greene Nichols, wife of Joseph B. Nichols; that after

the death of the testator there was born to the said Oliver W. Greene, James H. Greene, born July 29th, 1882, and Lottie B. Greene (now Rouse), born September 17th, 1887; that the testator's said son Oliver W. Greene died June 10th, 1895, intestate, and said Elizabeth Greene Nichols had died February 25th, 1884, intestate, and without ever having issue born alive to her, leaving her father, the said Oliver W. Greene, son of the testator, her sole heir-at-law, and was also survived by her husband, the respondent, Joseph B. Nichols; that at the time of the death of said Rachel R. Greene all of the said children of Oliver W. Greene, the son of the testator, save Elizabeth Greene Nichols, were living; that by the said last will and codicil of the testator there was devised to Rachel R. Greene all the rest and residue of his real and personal estate for and during her natural life, in the words following, to wit: "give, devise and bequeath unto my daughter Rachel R. Greene all the rest and residue of my real estate and personal property for and during her natural life she to support and furnish my son William Greene in sickness and in health with board and clothing and see that he is well provided for and taken good care of during his natural life. I hereby bind all the real estate and personal property given to my daughter Rachel R. Greene to secure his support as aforesaid after the death of my daughter Rachel R. Greene I give, devise and bequeath unto the children of my son Oliver W. Greene all the remainder of my real and personal estate to be divided in equal shares between them, to them their heirs and assigns they being bound to the support of my son William Greene in case of the death of my daughter Rachel R. Greene as aforesaid;" that the residuary estate so devised and bequeathed to the said Rachel R. Greene for her life consisted of the east half of the Roomes farm with the homestead thereon lying easterly of the Boston Neck road in the town of North Kingstown, and of personal estate, as shown by her inventory filed in the Probate Court, amounting to $11,524.45; that Rachel R. Greene during her lifetime kept and performed the conditions attached to the devise and bequest; that the respondent administrator is possessed as such administrator, succeeding

said Rachel R. Greene, of personal estate of said Reynolds Greene of the value of $9,615.19, as of December 3, 1909, the date of the oath to the answer; that upon the death of Rachel R. Greene, Walter R. Greene was appointed guardian of the person and estate of Wm. Greene, and has now in his possession of the personal estate of his ward, the sum of $8,500.00, not, however, derived from the estate of Reynolds Greene; that since the death of Rachel R. Greene and the appointment of the guardian of William Greene, said guardian, under the advice and order of the Probate Court of North Kingstown, has applied the sum of $10.00 per week out of the estate of William Greene for his support and maintenance; that a difference of opinion has existed between the complainants and respondents as to the rights of William Greene in and to the real and personal estate devised and bequeathed to the children of Oliver W. Greene; and as to whether the support of William was and is a charge upon the real and personal estate and whether said guardian is entitled to have and receive from said real and personal estate, or from said devisees in remainder and said administrator, the sum said guardian has applied from said ward's estate, to wit, the sum of $2,000.00.

And the bill prays that said will be construed by the court as regards the following questions, viz.: ·

1.   Did the devise and bequest in remainder in said Reynolds Greene's will vest in the children of Oliver W. Greene living at the time of death of' said Reynolds Greene?

2.   Did the said children born to Oliver W. Greene after the death of said Reynolds Greene take any estate under his will?

3.   Has William Greene the right to have and recover the sum applied by his guardian aforesaid to his support, out of the said real estate and personal estate?

4.   Did the said real and personal estate vest in the children of Oliver W. Greene, the son of said Reynolds Greene, which were living at the time of said Reynolds Greene's death, or did it vest in said children of Oliver W. Greene living at the time of the death of said Rachel R. Greene?

And the bill further prays that, if the court is of the opinion

that said William Greene has the right to have and recover the sum applied by his guardian to his support out of said real and personal estate, that an order and decree be made that the same be paid by such of the respondents as are liable to pay the same; and by said decree, to charge the same as a lien and charge upon said real and personal estate; and, upon the parties charged, not paying the same, to direct the application of said personal estate to the payment of the same, or the sale of said real estate for the satisfaction of the same out of the proceeds of the sale thereof; and that the court further order and decree that such certain sum as this court shall deem just for the future support of said William Greene shall be fixed and charged as a lien on such of said real and personal estate as may remain, and providing time for payment.

The answer of the respondent Rathbun, administrator, admitting substantially all of the essential allegations of fact as above set forth, joins in the prayer for the determination of the rights of the respective parties to the bill.

The other respondents, by their joint and several answer, admit all of the essential allegations of fact as above set forth, and pray for the determination of the following questions, viz.:

(a)  Was the devise and bequest in remainder in the will of the aforesaid Reynolds Greene to the children of Oliver W. Greene to only such as were living at the demise of said testator, or was the aforesaid devise and bequest to such children as a class and became determined and fixed at the demise of Rachel Greene?

(b)  Did there vest in each child of the said Oliver W. Greene a remainder in the estate devised and bequeathed under the will of said Reynolds Greene, and this so continue as children were born unto the said Oliver W. Greene and until the decease of the aforesaid Rachel Greene?

In order to the proper and orderly determination of the questions above set forth, it becomes necessary and proper, for the protection of the defendant Rathbun, administrator, to determine first, at his request, the following matters, viz.:

(1)    The nature of the interest which William took under the will?

(2)    Whether all the residuary estate, both real and personal, is charged with the payment of said interest?

(3)    Whether said charge continues during the lifetime of William or ceased at the death of Rachel?

(4)    Whether the residuary estate can be distributed prior to the decease of William?

(5)    Whether it was the intention of the testator that William should be maintained on the premises where he lived at the time of testator's death?

The will provides that William is to be "supported," to be furnished "in sickness and in health with board and clothing," to be "well provided for and taken good care of during his natural life." This is in effect a legacy to William.

In *Farwell* v. *Jacobs, Adm.*, 4 Mass. 634, Parsons, C. J., in speaking of a direction in a will to the executor "to support the testator's aged father in sickness and in health," said: "The direction to support and maintain the plaintiff results from the bounty of the testator declared in his will, and must be considered, as to the remedy, as a legacy."

(1)    The case of *Baker* v. *Dodge*, 19 Mass. (2 Pick.) 619, is similar. There the devise of the residuary estate, both real and personal, was on condition that the devisee should support the testator's daughter in health and sickness during her life. The devisee died, and the action was brought against the administrator *de bonis non* of the testator. Parker, C. J., said: "The question is, whether the provision in the will of Cornelius Baker in favor of the plaintiff in this action is of the nature of a legacy, so as to entitle her to recover against the present representative of the testator, and to have a satisfaction of her judgment out of the effects of the deceased. And we are all of opinion that such is the nature of the testamentary provision," citing and following *Farwell* v. *Jacobs, supra.* See also *Wood* v. *Barstow*, 10 Pick, 368; *Emery* v. *Swasey*, 97 Me. 136 (cited *infra*); *Jordan* v. *Donahue*, 12 R. I. 199.

We find, therefore, that William, by virtue of the provisions

for his support for life, stands in the relation of legatee to the estate of his deceased father.

We think it is clear that it was the intention of the testator to make such legacy an express charge upon all the residuary estate to secure the support of William as long as he lived. His words are: "I hereby bind all the real estate and personal property given to my daughter Rachel R. Greene to secure his support as aforesaid." The real estate and personal property given to Rachel and referred to in this sentence was "all the rest and residue of my real estate and personal property," and included the homestead estate and the bank accounts, which at the present time compose the whole estate. It should be noted that it was not the life interest of Rachel in this rest and residue, but the "real estate and personal property" itself, that the testator charged to secure William's support.

Moreover, it is well settled that even if the testator had not expressly bound the real estate and personal property to secure William's support, nevertheless his maintenance, being in the nature of a legacy, would have been a charge upon the entire residuary estate, real and personal. Rachel took her life interest under a general residuary clause, and the children of Oliver take their interest in remainder also under the same general residuary clause. In either case the residuary devisees are entitled to nothing except what is left after the legacy to William is paid. *Lapham* v. *Clapp*, 10 R. I. 543; *Martin, Petitioner,* 25 R. I. 1; *Tyler* v. *Tallman,* 29 R. I. 57, 63.

In *Tyler* v. *Tallman,* 29 R. I. 57, at p. 63, it was said as follows: "The effect of placing realty with the residue was to subject it to the general rule governing residuary estate. The rule is well stated in Hill on Trustees, 4th Am. ed. *p. 360. ' It is clearly settled that where a testator gives several legacies, and then without creating any express trust for their payment makes a general residuary disposition of the whole estate, *blending the realty and personalty together in one fund,* the real estate will be charged with the legacies; for in such case the "residue" can only mean, what remains after satisfying the previous gifts.' This doctrine has been recognized and followed

in *Lewis* v. *Darling*, 16 How (U. S.), 1, 10 (1853); *Gould* v. *Winthrop*, 5 R. I. 324 (1858); *Lapham* v. *Clapp*, 10 R. I. 543 (1873); *Mathewson & Arnold, Petitioners*, 12 R. I. 145 (1878); *Phillips* v. *Clark*, 18 R. I. 630 (1894); and *In re Will of Francis Willis*, 25 R. I. 336 (1903); as well as in the numerous cases cited in the opinions in the foregoing cases."

It follows, from what has been said, that the charge for the benefit of William continues during his life and is upon the whole residuary estate, both real and personal, and that such charge did not cease at the death of Rachel R. Greene. It seemed from the answers of the respondents, children of Oliver W. Greene, that they intended to take the position that such express charge for the benefit and support of William was to be regarded as terminated at the death of Rachel R. Greene, and that it was the intention of the testator that after Rachel's death the estate should no longer be bound; but only that the children of Oliver should be personally bound. We do not, however, find any such contention in the brief or argument for said respondents, and in any event, as we have shown, such a contention is clearly untenable. The duty of supporting William is clearly imposed first upon Rachel so long as she lives; and if William should outlive Rachel, then such duty is just as clearly imposed upon the children of Oliver; and by the plain language and manifest intention of the will, the charge upon the residuary estate is made coextensive with the duty. The death of one person, upon whom the duty was first imposed, has no effect to relieve the residuary estate from the charge where the intention to charge the entire residuary estate is manifest. See *Dodge* v. *Hogan*, 19 R. I. 4, 7, 8; *Jordan* v. *Donahue*, 12 R. I. 199, 200; *Clapp* v. *Clapp*, 6 R. I. 129, 136; *Emery* v. *Swasey*, 97 Me. 136.

(2) As to the time when the respondent Rathbun, administrator, should be required to distribute the personal estate in his hands, we agree with the contention made by his counsel, that he should hold the personal estate now in his hands, charged as above shown, with the support and maintenance of William, until after the death of William. It is impossible to determine what portion of the residuary estate may be needed for

the support of William. It is not a fixed amount. The whole residuary estate may be consumed, and there may be nothing for distribution at the death of William. On the other hand, it is conceded that William is a very old man, upwards of eighty years of age, although his exact age is not shown by the pleadings, so that his expectation of life is comparatively short. We do not find in the answer of the respondents (children of Oliver W. Greene), nor in the brief arguments submitted in their behalf, any definite claim that such personal estate should be immediately distributed; and we are of the opinion that the charge upon such personal estate may be better and more conveniently secured upon the same in the hands of said administrator than in any other manner. The case, in this aspect of it, is quite analogous to the case of *Lapham* v. *Clapp,* 10 R. I. 543, where it is said (p. 544): "We therefore declare the legacy to be a charge upon the money in the hands of the executor, and instruct him to employ the same, so far as it will go, in satisfaction of the legacy. We also declare that the legacy is a charge upon the real estate."

The respondent administrator further contends that it was the intention of the testator that William should be maintained and supported upon the homestead estate, devised to Rachel for her life, and after her death to the children of Oliver W. Greene. Although such intention is nowhere in terms expressed in the will, we think it may be said that such was the general intent of the testator, to be drawn from an examination of the various provisions. The testator imposed the burden of maintaining William upon the devisees in succession entitled to the homestead. By the original will, John was given the homestead, and was to support and maintain William from the profits of the estate. John died and the codicil was executed. In the codicil Rachel was given the homestead, she to support and furnish William in sickness and in health with board and clothing, and see that he is well provided for and taken good care of during life. After Rachel's death the children of Oliver were given the homestead, and were to carry out the terms of the will in respect to Wil-

liam's support. And both the real and personal estate were
expressly charged with such support during the life of William.
Further, it is stated in argument, and not denied, that the de-
visees in remainder have acted upon this construction of the
will, and since the death of Rachel have attended to William's
care and furnished him with board and clothing upon the
homestead estate. It was also the construction placed upon
the document by Rachel, when, with the permission of the
Probate Court, she applied a large portion of the personal
estate in constructing a new house upon the homestead prop-
erty for herself and William.

This aspect of the case is quite analogous to the case of *Emery*
v. *Swasey*, 97 Me. 136. There a testator devised to his sister
H. and her husband, and the survivor, his homestead farm,
to hold during their natural lives and the life of the survivor,
"subject however to the obligation to furnish a comfortable
home and maintenance for my sister E. during her natural
life." On the death of the survivor, testator devised the farm
to his nephew for life, and on his decease to other relatives,
but did not mention the maintenance of his sister E. in such
devises. E. was very old and without any home, and testator
had provided a home for her for fourteen years before his death;
it was held that the testator clearly intended that his sister E.
should have maintenance on the homestead farm, and that the
legacy to her was a charge on the property, and followed it
into the hands of every life-tenant who accepted the devise of
the homestead. See also, to similar effect, *Parker* v. *Parker*,
126 Mass. 433; *Van Blarcom* v. *Van Winkle*, 36 N. J. Eq. 103.

While it appears that it was the general intent of the testa-
tor that William should continue to reside and be supported
upon the homestead property, we do not mean to be under-
stood as holding that under any and all circumstances he must
be kept there. So far as anything appears in the case, it is
still as proper for his well-being that he should now remain
there, as it was during the life of Rachel R. Greene. Circum-
stances, may, however arise in which it would not be proper
that he be compelled to remain there; and we do not hereby

intend to hamper his guardian in the proper exercise of discretion as to his future place of abode.

(3)      We proceed now to answer the specific questions propounded by the bill and by the answer of the children of Oliver W. Greene. Stripped of unnecessary verbiage and repetition, so as to state the real questions involved with clearness and precision, questions 1, 2, and 4 propounded by the bill, and questions (a) and (b) propounded by the answer, should be consolidated and stated as follows:

Did the will of Reynolds Greene, by the words "after the death of my daughter Rachel R. Greene, I give, devise and bequeath unto the children of my son Oliver W. Greene all the remainder of my real and personal estate to be divided in equal shares between them, to them their heirs and assigns," . . . create a remainder which vested, at the death of the testator, in those children only of Oliver W. Greene who were living at the death of the testator, to the exclusion of those born afterwards during the life of Rachel R. Greene, or did it create such vested remainder in those children of Oliver W. Greene living at the death of the testator so that such remainder would open to let in such children of Oliver W. Greene as were born after the testator's death and before the death of the life-tenant?

The only remaining question (being question 3, in the bill) is—"Has William Greene the right to have and recover the sums applied by his guardian aforesaid to his support, out of the said real estate and personal estate?"

There is no doubt that the remainder created by the will by the words above set forth vested at the death of the testator in all of the children of Oliver W. Greene then living, subject to open and let in the children of Oliver W. Greene born after the testator's death and before the death of Rachel R. Greene, the life-tenant. The law is well stated in *Moore* v. *Dimond*, 5 R. I. 121, at p. 129, as follows: "Now the rule is, that where a devise is made to a class of persons, as to children, and no time is fixed by the testator, if the gift is to take effect immediately in possession, the estate vests immediately on the

testator's death in all those who are living. They all take a vested interest. 2 Jarm. on Wills, p. 75, and cases there cited. And where a particular estate is first given, and a devise over to children, the rule is the same as to those then living. Ib. The only difference is, that in the last case (which does not exist in the case before us since none of the children were born after the testator's decease,) that though the entire remainder vests in the children living at the death of the testator, it is nevertheless subject to be divested so as to let in such children as may be born after the testator's death, and before the period when it is to vest in possession and be distributed. 8 Ves. 375; 10 East, 503 a; 4 Madd, 495; 7 Metc. 300. In both cases the remainder vests equally."

In *Weston* v. *Foster*, 7 Metc. 297, 300, it was held as follows (p. 300): "This being a devise to John for life . . . with remainder in fee to the children of Daniel R., Thomas and Henry, there being children of these sons then living, it was a vested remainder, and vested in them at the time of the death of the testator. But as it was intended for the equal benefit of all the children coming within the description, it would open to let in after-born children. *Dingley* v. *Dingley*, 5 Mass. 537."

The same rule of construction has been fully approved in *Fosdick* v. *Fosdick*, 6 Allen, 41, 44; *Hatfield* v. *Sohier*, 114 Mass. 48; *Gibbens* v. *Gibbens*, 140 Mass., 102; *Dole* v. *Keyes*, 143 Mass. 237, 238; *Ballard* v. *Ballard*, 18 Pick. 41, 44; and see to the same effect *Rudebaugh* v. *Rudebaugh*, 72 Pa. St. 271; *Field* v. *Peeples*, 180 Ill. 376.

(4)    As to the interest of Elizabeth Greene Nichols, one of the children of Oliver W. Greene, who was living at the death of her grandfather, Reynolds Greene, the testator, March 29, 1881, who was the wife of Joseph B. Nichols, and who died Feb. 25, 1884, intestate and without ever having issue born alive to her, leaving her father Oliver W. Greene, surviving her, and leaving also her husband Joseph B. Nichols surviving her, it can not be doubted that she became entitled at her grandfather's death to a vested remainder in an undivided part of the resid-

uary real estate, which passed to her father as sole heir-at-law, and which, in turn, at his death, June 10, 1895, intestate, passed to his heirs-at-law, to wit, all his remaining children hereinbefore named; while as to that portion of the residuary estate which consisted of personal property, it can not be doubted that, she having died intestate and her husband surviving her, her husband, Joseph B. Nichols, became at her death and thereafter entitled to administer upon her estate; and that he may hereafter become entitled to demand and receive, as her administrator, if he should see fit to qualify as such, such proportionate part of the said personal property as Elizabeth Greene Nichols would be entitled to receive (if she had survived) at the time of the distribution thereof. *Shattuck* v. *Stedman,* 2 Pick. 468; *Ballard* v. *Ballard,* 18 Pick. 41, 44; *Weston* v. *Foster,* 7 Met. 300; *Gibbens* v. *Gibbens,* 140 Mass. 102, 106; *Lombard* v. *Willis,* 147 Mass. 13.

The pleadings do not disclose whether the said Joseph B. Nichols has ever been appointed and qualified as administrator upon the estate of Elizabeth Greene Nichols; so that we are unable, in this state of the case, to decide whether, in fact, said Nichols is or will be entitled to demand and receive such share of the personal estate in the hands of respondent Rathbun as his wife would in the future be entitled to receive if she had survived. As we have before decided, inasmuch as this personal estate, in the hands of Rathbun, administrator, is, together with the real estate, subject to a charge for the support of William Greene, such personal estate will be allowed to remain in the hands of said administrator, subject to said charge, until after the death of William Greene, in order that it may be possible to ascertain with certainty how much will then remain subject to distribution.

(5)    As to the question, "Has William Greene the right to have and recover the sum applied by his guardian aforesaid to his support, out of the said real estate and personal estate?" we do not find it possible to give a direct and positive answer.

The case, as made upon the bill and answers, does not disclose whether or not, since the death of Rachel R. Greene, any

contribution to the support of William has been made by the residuary devisees or from said residuary estate, or, if any, how much; nor does it appear (except by statements in argument) whether William has been kept and furnished with a home and with board and clothing by the residuary devisees, upon the real estate, or otherwise. Nor do we know whether the sum of $10 per week which his guardian, Walter R. Greene, complainant, has applied for William's support and maintenance out of William's own individual estate, under the advice and order of the Probate Court of North Kingstown, has paid the entire cost of his support and maintenance; or whether it has been in addition to other support and maintenance furnished by the residuary devisees who are bound to support and maintain him under the terms of the will, as above shown. In *Bourne* v. *Hall*, 10 R. I. 139, where a bill in equity was filed by the administrator of a deceased person *non compos mentis*, for whose benefit a charge for support and maintenance had been imposed upon real estate by the will of the father of the deceased, seeking to establish a trust upon the owners of the estate and a reimbursement for moneys expended out of the individual estate of the deceased for his support, it was said (p. 152): "The defendant further contends that the provision of the will for the support of William was personal to himself and expired with him. We quite agree with the defendant that no one but William can claim to be supported under the will; but it appears that, by reason of the default of those chargeable with his support, his estate has been lessened, and the question is whether, to the extent to which it has been lessened, it ought not to be indemnified. The defendant says not. He says that after the death of the testator property came to the *non compos* by inheritance, and that it is not to be supposed that it was the intention of the testator that he should continue to have his support from Lucy and George Coggeshall after he had come into possession of property of his own. Doubtless the guardian of William, after he had become possessed of property of his own, would be justified in affording him a better support than before, and for the additional ex-

pense of such better support would be entitled to look only to the property of his ward; but we can discover no indications in the will that the testator did not intend his son should continue to participate in his bounty as he had previously been entitled to do in the event of his inheriting property from another source. On the contrary, the fact that the will provides that, if he should become of sound mind, he should have a third of the real estate devised to the other two sons, shows that he was an object of special testamentary care and regard. . . .

"The defendant urges that if the *non compos* continued entitled to support under the will, notwithstanding his own property subsequently inherited, and did not have such support, the fault was that of his guardians, who did not enforce it, and the plaintiffs can look only to them for indemnity. We do not take this view. It may have been the duty of the guardians to enforce the right of their ward under the will, as it would have been their duty to enforce the payment of a debt due to him, if any such there were; but, in our opinion, their neglect did not operate as a release of the duty of support in the one case, any more than it would as a release of the debt in the other. The duty imposed by the will was an active duty to care for a person incapable of caring for himself, and should have been voluntarily performed, without waiting for any request; and if, by reason of any neglect to perform it by those charged with the duty, the estate of the *non compos* has been reduced, we think his administrator is entitled to resort to the farm, upon which his support was charged, to have the estate, to the extent to which it was so reduced, made whole again. Beyond this, however, we do not think any claim of the plaintiffs can be allowed. . . .

"We think a decree should be entered sending the case to a master to take an account, not extending back, however, to any time anterior to the decease of Lucy Coggeshall."

In accordance with the above views, we think that the complainant, William Greene, is entitled to have, and recover from the defendant Rathbun, administrator, out of the personal estate

of Reynolds Greene, deceased, now in his hands, such an amount as shall be shown, upon reference to a master (or by agreement of parties), to have been necessarily and properly expended for his support out of his own individual estate in the hands of his guardian, so that his individual estate may be reimbursed for any depletion thereof, if any, caused by the failure of the residuary devisees to furnish him with support under the terms of the will.

(6)　　Inasmuch as the fund in the hands of the respondent Rathbun, administrator, appears to be ample for such support of William Greene as may be required for the remainder of his life, we do not deem it necessary at present that a decree be entered directing sale of the real estate and application of the proceeds of sale; nor can we now, from anything appearing in the case, fix any certain and definite amount which should be decreed to be paid for such support either out of the fund in the hands of the administrator, or by the residuary devisees. The parties may be able to agree upon such sums as would be proper from time to time, or the case might, if the parties so desire, be referred to a master to ascertain and report what sum should be allowed and paid.

The parties may prepare and present a form of decree, in accordance with this opinion, stating the rights of the respective parties in and to the real and personal estate here in question, and charging the same with the support and maintenance of William Greene, under the provisions of the will, with provision for reference to a master in chancery (if desired, and unless the parties can agree) to ascertain what amount, if any, should be paid over by the administrator to the guardian, to reimburse the individual estate of William Greene, and what amount should be allowed for the future support of William Greene, and with leave to apply for further relief by decree, in case it becomes necessary in future to resort to the real estate for the future support and maintenance of said William Greene.

*Gorman, Egan, and Gorman,* for complainants.

*Herbert A. Rice, Frederick C. Olney, Lyman and McDonnell,* for various respondents.